May it please the court, my name is Lewis Landau and I represent appellants, bankruptcy debtors, Terrence Tomcow and Zafar Khan. With the court's permission I'd like to request three minutes for rebuttal. Thank you. This case concerns application of Bankruptcy Code Section 510B and mandatory subordination under the court's recent Del Biagio decision to Mr. Barton's four million dollar claim and the effect of subordination in an individual's bankruptcy case. Second and distinctly, this case concerns the erroneous conversion of another otherwise eligible Chapter 13 case to Chapter 7 based on inherently inconsistent and conflicting findings concerning eligibility to file. In view of the court's recent Del Biagio decision, this court should reverse the Bankruptcy Court's orders denying subordination and disallowance of Mr. Barton's claim and remand the case for consideration under Del Biagio. In addition, the court should reverse the Bankruptcy Court's orders converting the case to Chapter 7. Your Honors, the briefing contains substantial argument regarding the application of Bankruptcy Code Section 510B to an individual's bankruptcy case. Most of that argument was rendered moot by Judge O'Scanlan's excellent decision in Del Biagio. Not only does Del Biagio hold that Section 510B applies to an individual bankruptcy case, but the court expressly reviewed and disagreed with the very Bankruptcy Appellate Panel decision published in this case. Counselor, I'm quite familiar with that, but the question is whether there is another ground in this appeal which would justify subjecting to mandatory subordination. My point is that in Del Biagio we were concerned as to whether it applies only to corporations or whereas here we have the question of whether there is a securities issuance issue at all. Arguably, we have here a claim based on forged documents and the destruction of the shareholder records which would not be within the term would it not? Understood, Your Honor. Am I looking at you when I look this way or this way? This way? I'm not sure. This way. Thank you, Your Honor. Your Honor raises the causation issue. The causation issue, the predicate issue is does Section 510B apply to cases like this? That setup is precisely the same as Del Biagio. The Bankruptcy Court below and the Bankruptcy Appellate Panel said no. So they never really got to the meat of the issue. The issue under 510B is causation and Your Honor went through that in Del Biagio very carefully and looked at the test for causation for 510B to apply and you called it out this way. You found the required nexus between the creditor's damage claim and the purchase of securities because quote the creditor's claim was really no claim at all but for his investment in the affiliate and secondarily the creditor's asserted injury is inseparable from his investment in the affiliate. I think those are excellent tests to pick up and apply to this situation and they do. Counsel, help me understand whether your position is that in this case that we are dealing with a purchase of securities as distinguished from Del Biagio which clearly did involve a purchase of securities. Well, sure. The nexus is broadly interpreted under all of the Ninth Circuit's opinions and the cause of action that led to Barton's judgment had four causes of action in the complaint. Fraud. Fraud in the issuance of securities to Barton. It's the same fraud that shows up in all of these other cases. It's a little different variety of fraud than in Del Biagio but securities fraud is the classic claim that pleads itself into Section 510B and the other causes of action all generated the four million dollar liability under the judgment. Mr. Barton didn't get his shares. He claimed it was fraud. He claimed it was breach of his money damage claim was equivalent to getting the shares. To me, the confirmation of that issue is the following findings set forth in the BAP opinion. In August 2012, the state court initially ordered the reissuance of the converted RAL shares to Barton. In June, the state court reversed its decision to order restoration of the stock and instead awarded the value of the stock. That's to me causation. That is inseparable from the issue of issuance of the shares. In fact, he was supposed to get the shares under the first order and then the Superior Court monetized that same relief. That to me is strike zone causation under the broad definition of causation under the Ninth Circuit's tests. So I recognize that the appellee has called that issue out. In our letter brief to the court, we thought that the case really should be summarily reversed under del Biagio because the issue at up front was does 510B even apply? The letter brief from the appellee raised the causation issue and I believe that really any of these issues really in the first instance need to go back to the bankruptcy court. Let's remember, if there's any factual issue here, the bankruptcy court on a subordination claim needs to have a summary judgment because the court found that Section 510B doesn't apply. So based on all of that, Your Honors, I would urge the court to reverse and remand the subordination and disallowance issues. The interesting question on a final point on subordination. The interesting question left open in del Biagio was the remedy because you didn't need to reach that in del Biagio and Your Honor recognized three different approaches to the remedy of what do we do once Section 510B applies? What do we do with the claim? Again, none of the courts below reached that issue because 510B just didn't apply. There's a lot of ways that that could work out. If the case stays in Chapter 7, then the question is under Section 726A of the Bankruptcy Code, is the Barton claim distributed basically at the same level as equity, as ownership? That could be the result and under the Second Circuit opinion, which Your Honor looked at favorably, I think that that would be the result. On the other hand, if the case reconverts to Chapter 13 and I get a chance to do a plan, then it would probably be the same setup as del Biagio because that was a plan in Chapter 11 where the claim drops down under everyone else, probably doesn't get paid. Moving on to conversion, the conversion issue. Your Honors, in regard to conversion, the Bankruptcy Court erred in converting the case under Section 1307C by making inherently inconsistent findings that undermine the court's totality of the circumstances analysis. First, I want to acknowledge the elephant in the room, which is the burden of proof. I'm coming here and asking for that to be reversed. The standard of review is abuse of discretion and requires I convince the court that the Bankruptcy Court applied an incorrect rule when it evaluated the totality of circumstances. I recognize that's not often reversed. However, there was a mistake made here and it's involved in the inherently inconsistent findings where the Bankruptcy Court found that the debtors were eligible to file Chapter 13 because the Barton claim was not subject to ready determination, but then used the timing of the debtors filing to state that the debtors were manipulating the Bankruptcy Code by filing when they did. So it's kind of damned if you do, damned if you don't. If we waited to file, then we couldn't, we weren't eligible for Chapter 13. And so that was the heart of the Bankruptcy Court's manipulation finding. I think that's an error of law and it's an error of law because when a debtor does something that the Bankruptcy Code allows the debtor to do, that cannot become part of the bad faith amalgam of factors to determine for bad faith. And there's a string of Ninth Circuit cases that don't say that that clearly, but basically implement that rule. It's the Gobe case, which is cited throughout the briefs, where the court, the Ninth Circuit didn't impose a substantial repayment requirement as a condition to good faith of a Chapter 13 plan because the Code sets forth what's required in a Chapter 13 plan. That rule gets carried forward into other Ninth Circuit cases and I think appears in the court's Blendheim decision as well, where the court basically said Chapter 20s are not expressly prohibited by the Code, so let's not use bad faith to throw them out just because they're Chapter 20s. That's the rule I'm asking to be imposed here. The debtors were to, at the same time, be a manipulation of the Code. And I would submit, Your Honor, that once the inconsistent finding is removed from the totality of circumstances test, the court should not, as the BAP did, find that, oh well, there's all these other circumstances that still result in a finding of bad faith. It's kind of pulling out the key ingredient of a stew or chicken, taking the chicken out of chicken soup. Is it still chicken soup? I think that determination needs to be first made by the Bankruptcy Court once the finding is made, and then the Bankruptcy Court does the weighing and whether the remaining factors are sufficient. So on those grounds, Your Honors, I would ask for reversal and remand on all points. All right. Thank you, counsel. Thank you. Good morning, Your Honors. Patrick McGarrigle for the appellee. Mr. Barton, please the court. I'll deal with counsel's arguments first with this question of the Bankruptcy Court issued three grounds for granting the disposition of the subordination objection. One, that the claim was not, of Mr. Barton, was not for damages based on a purchase and sale of security. Secondly, that the prongs associated under Betacom, including the dissimilar risks and expectations between shareholders and creditors, and the other prong that there be some equity cushion were not present. And thirdly, that the facts of this case, there are no other equity creditors scheduled in either of these bankruptcies. In fact, the only creditors, as Your Honors can see, are credit card companies, maybe totaling $14,000 with respect to Mr. Kahn and less than $15,000 with respect to Dr. Tomcow. So this isn't a factual case where like in seeking restitution for their investments or any other transactions, for example, in Tristar, Betacom, Sequest, Orange County Nursery, where there are actual shareholders in existence at the time of the petition filing who are seeking to get compensation ahead of other creditors. But what difference does that make as to the issue of whether or not the transaction stemmed from the Well, let's understand what Mr. Barton's claim was. It was misstated by Mr. Landau. Mr. Barton had a fraud claim because his shares in ARPA International Limited were stolen through fraud, forgery, and destruction of records. That's not an affirmative agreement like in all the cases I just listed, where the shareholder is still a shareholder and is actively involved in a transaction involving those shares. It's apples and oranges. That's number one. Number two, if 510B is going to be rewritten so that all the claim has to do is involve the value of shares, then you've got to put a line through rising out of the purchase and sale of the securities. Because that language shouldn't... Well, rising out of, to me, is the operative term. Well, sure. So what does it mean to arise out of the sale of a security? Well... If you can be traced back to the sale of a security, doesn't that meet that very broad arising out of language? No, it doesn't. Why not? For two reasons. Number one is, the legislation, I think Your Honor mentioned it in Del Biagio, commands specific situations where 510B applies. It says damages for claims arising out of the purchase and sale. So, is there a purchase and sale transaction at issue in the Barton claim? It hasn't been asserted by the appellant because there is no purchase and sale transaction. There's not a purchase and sale agreement. There's not a term sheet. There's not an MOU. There is nothing. So we don't meet that threshold specific language. So then to Your Honor's point, well, should the arising out of language capture this type of case? And the answer to that is no. I mean, when the bankruptcy petitions were filed... Well, counsel, in Del Biagio, the court said the central purpose of absolute priority rule, which requires that creditors be paid in full before equity holders. So at bottom, Mr. Barton was an equity holder. No. Respectfully Your Honor, Mr. Barton, he was an equity holder until June 2009. So the company and the debtor divested him of his ownership. So he hadn't been... He was an equity holder and that's the status that the bankruptcy, the bankruptcy petition is to pay other people before equity holders. And at bottom, he was an equity holder who was defrauded of his shares. No. Your Honor, when Mr. Barton's shares were stolen from him in 2000... He was an equity holder. At the time that they were stolen, he was an equity holder. But that right, that shareholder right was fully divested. He had no upside in appreciation. There was no equity cushion. They're not even arguing equity cushion in this case. They don't even have any other shareholders who are being defrauded by having Mr. Barton allegedly jump ahead. I mean, if we're going to look at the standard, let's look at all of the standard. There is no profit participation by Mr. Barton whatsoever, number one. Number two, when his shares were stolen, all he stood to gain was as a debtor. I mean, as a creditor with a debt to claim. He didn't have the upside. And that's what all the analysis from Betacom on talks about is those two standards. The language in Raid del Biasco is much broader in terms of, it says, the language of Section 510B extends the reach of the statute beyond the prototype fact pattern of a purchase and sale of security. The claim against the debtor is abortionated when it relates to, it relates to is a very broad term, to either a security of the debtor or the security of an affiliate of the debtor. It's a very broad language. Well, listen, I'm not going to argue that the phrase arising out of or relates to is not broad. We all know it is. But it is framed by the language arising out of a purchase and sale of security. If the legislature meant to mean arising out of mere ownership of security, that would be one thing. But that's not the language they used. And so arising out of has to be tested by purchase and sale. The appellant cannot assert that this is a case. And respectfully, I like the del Biasco decision because it does a number of things. Even though it discusses the arising out of language, it didn't need to reach it because Mr. Freeman admitted it was a 510B transaction. It did arise out of the sale of security. He was a shareholder. That was admitted. He was trying to reclaim his investment and equity upside. All of those facts make it clear that this case, Mr. Barton's old and cold claim for his stolen shares has no correlation to a case where the claimant actually concedes 510B applies. And I think it just would make bad law to convert the language saying arising out of purchase and sale of security means every transaction that ever involves shares or just anything involving shares. Because then the legislature should just say that. Any transaction. They don't say anything involving purchase or sale. Right. So that means every claim involving the value of shares, whether it involves a purchase. The value of shares involving the purchase or sale. Well, Your Honor, respectfully, where is Mr. Barton's purchase and sale at issue? His shares were stolen in every one of the transactions. He purchased them before they were stolen. That's the problem I'm having with your argument. But if that's the point, then every share case, every case involving somebody's shares falls under 510B. Maybe that's the intent of the statute. That's what In re del Biagio seems to infer. Well, respectfully, I don't think In re del Biagio on its facts goes either need to go that far or really address this type of case. Counsel, let me just be sure I understand your position. Do I understand correctly that your claim in bankruptcy is based on the judgment out of the state court which found a value of 3 point something million dollars? What is the basis of your claim? The basis of Mr. Barton's claim, Your Honor, in the bankruptcy is his judgment that was obtained for damages. And when there was a reference, I think, in the appellant's argument that Mr. Barton's claim was for fraud in the issuance of securities, that is a complete falsehood. That's not even in the complaint. Mr. Barton's claim was that his shares were stolen by fraud. It's not a securities claim. It's not a fraudulent inducement claim the way it was in del Biagio and a number of other cases that we've cited in our papers. But, Counsel, didn't the state court initially order that the shares be returned? Yeah, it did. But two things. A. Mr. Barton never sought the return of his shares. You have his complaint. He didn't ask for the return of the shares. Right, but isn't that an indication that the court at least viewed this as being tied to his ownership of the shares? Well, his damages relate to the value of the shares as of the date they were fixed, which was 2009 June. I mean, we can have a discussion about the value of the shares separate and distinct from trying to convert that claim into one that arose out of a purchase and sale transaction, where all the other cases actually had a purchase and sale transaction at issue. The trial court struggled, as this mammoth record reflects, struggled with how to value privately owned shares. And so, kind of throwing up his hands, he said, well, I can't figure out how to value it, so I'm going to restore them. Except the problem here, Honor, is that the debtors transferred all the assets out of ARPOS International Limited prior to the trial and effectively divested any value in the company by the time we went to trial. So as the judge went through it in the punitive damages phase in November 2012, he said it wouldn't be equitable to restore it. So by the time the petition was filed, and I think that's a touchstone, at the time of the petition, the trial court had already rescinded its ruling that it was going to restore the shares and said, I'm just going to award damages. And right when that case was filed, two days earlier, then they filed bankruptcy. Were the damages that you refer to based on the finding of fraud in your case? The damages were based on finding of fraud and finding of conversion. There were a number of causes of actions, Your Honor. Conversion, intentional breach of fiduciary duty, and fraud. And those damages flowed from the value of the shares as of the conversion date, pardon me, in June 2009. And that's the other point, is that in all the cases that talk about 510B, you know, if we go back to the CyberSite case and even American Wagering, the value of the shares are fixed. There is no upside. And so we look at 510B not in a vacuum, just, well, we have to have subordination if there was a purchase and sell transaction. We look at the other components. Was there an anticipated upside for Mr. And in fact, the appellant, neither in their or any of their briefing below or before this court have argued those two prongs. And they haven't even argued them today. And secondly, was there an equity cushion? There is no indication that personal credit card companies, the handful of them in these schedules, issued credit to the debtors in reliance on an equity cushion. We don't have any common shareholders, preferred shareholders. There are no scheduled equity participants. So even if all of this were pushed aside and we said, well, we're going to mandate subordination. Subordinate to what? And that was Judge Brand's position. What are we subordinating to? $14,000 in credit cards with non-security holders? If that's what it's about, I don't think it's appropriate, but that's as far as it would go. I guess the other issue that was kind of misinterpreted by the appellant is that, well, the court should just then disallow. Disallowance means that the underlying claim is not valid. And there's been no argument and certainly no evidence in the record that Mr. Barton's claim, which succeeded in the state court, is not valid. The only decision cited in the appellate brief was Careri. And that didn't make a blanket holding about the issue that if you subordinate it must be disallowed. In that case in the Fifth Circuit, the underlying shareholders, who again were shareholders in this 510B case, the court determined that their claims were not right. We don't have that issue here. We have a state court judgment with specific findings and damages awarded. No indication whatsoever that Mr. Barton's claim should be disallowed. And in fact, whether it's an Orange County nursery where the court held that notwithstanding subordination applied, there shouldn't be disallowance. Or even in Del Viaggio, there was no disallowance addressed. There is no required disallowance in Mr. Barton's claim. One last point on that subject. Under California law, officers and directors of the corporation are personally liable for their fraud. Personally liable for the theft of shares. That point has been unrebutted by the appellant on two different levels. Three levels. The court below, the bankruptcy appellate panel, and in this court. There's an independent ground for these debtors' liability to Mr. Barton for the theft of his shares. There is no case cited. None by the appellant that says well, in a subordination case, we automatically strike out a holding of liability on the debtor in a fraud case. Where there is direct liability under the law. None whatsoever. I've got about a minute and a half, but there should be no reversal. The bankruptcy court below on the subject of subordination considered all the facts and the law, and on each of those points correctly held that there was no purchase of security at issue here. That the two factors under Betacom were not satisfied by the moving party appellant. And that the specific facts of this case with no equity holders and only a few credit card companies is not the case where there is a prioritization of Mr. Barton's claim below anybody. Now, with respect to conversion of the case, a number of points. Number one, the trial court, the bankruptcy court had a number of facts before it. It determined that the debtors were both evasive and didn't cooperate and comply with the bankruptcy trustee's request for information. This is, it's a misstatement to say that the bankruptcy court simply held bad faith because of the intent to defeat the state court judgment. That is a misstatement. Both the BAP recognized that in the record. We pointed out in the record that the misleading and incomplete information. That was sufficient from the bankruptcy court's viewpoint to go ahead and proceed with bad faith. They're asking for the Leavitt factors to be rewritten such that the totality of circumstances now shouldn't include the third component neither the Ho decision or any other cases cited by the appellant support such a conclusion. So in closing, we request that the court affirm the bankruptcy court's determinations and judgment and that the issue about whether or not an individual debtor applies or doesn't apply for subordination is really a non-issue in terms of affirming the ultimate decision. Mr. Barton's favor. Thank you counsel. Thank you very much, your honor. Thank you again. Some comments on the policy factors that were raised by the appellee. That the policy the policies behind application of Section 510B don't apply here. I really think that that issue was really helped by the holding in Del Biagio because first, Del Biagio clearly says that the second element, which is the equity cushion element, really doesn't apply in these affiliate type circumstances, affiliate cases. So the second policy doesn't even come into play and trying to shoehorn it into this really doesn't fit and I think that was part of why the courts below found the way that they did because they were trying to apply it to circumstances that don't work. The expectation of upside is an interesting one because that was argued from the standpoint, again, of the individual debtor. Of course it doesn't work when we're looking at expectation of upside vis-a-vis the individual debtor and again, Del Biagio talks about that that policy factor is evaluated in these affiliate cases by looking at the expectation of upside in the corporate stock is and if you have equity, then of course you're looking at the upside of having equity versus having a claim. But what's your response to opposing counsel's distinction between the facts of this case and his perception of the facts in the Del Biagio case where there was a direct purchase and sale issue and the shares were still being held? What's your view of that arising from causation language in the statute, which is interpreted very broadly and I go back to the way Judge O'Scanlan applied the test in Del Biagio, which I think is very helpful where it was found that the creditor's asserted injury is inseparable from his investment in the affiliate. That's what we have here. It's a share case. The money damages arise because he didn't get his shares. It's inseparable. There are probably cases where it is separable, but this one isn't. May I ask what do we do then with the judgment out of the Superior Court? That was clearly a judgment based on the finding of fraud and an award of damages. How does that fit into your analysis? The question is, is the again, the courts below never got there. They didn't like applying 510B in these circumstances. I think that world has changed after Del Biagio. If that argument, if counsel wants to make that argument below. Counsel, I'm sorry. Maybe I wasn't clear in my question. My question is Barton says that their claim in bankruptcy, in the bankruptcy proceedings is the judgment that came out of the State Superior Court, which was a judgment of finding of fraud and an award of damages. What is your response to that? They say that's what this claim is. And I agree with that. That's what it is. And that claim arises under the statute, 510B, from the purchase or sale of under the long line of Ninth Circuit cases. And when that claim is put through the machine of Section 510B, the question is what's the remedy? What's the treatment of that claim in this bankruptcy case? And I submit to your honor, what I'll argue below when it drops back down, is that if this case stays in Chapter 7, which it shouldn't, based on my other issue, but if it stays in Chapter 7, the creditor's claim should be disallowed. Because it's not a creditor claim. It's the equivalent of an equity interest under the Chapter 13. And so it may be allowed as an interest, equivalent to the debtor down at the bottom rung of the ladder. If it stays in Chapter 13, then that claim will drop down below unsecured creditors under the Chapter 13 plan, which I'll propose when we're back in 13. And your honor, in that respect, I need to address this issue of that there are no other creditors in the case. Mr. McGarrigle knows that that's wrong. There are millions of dollars of proofs of claim filed down below. All of that happened in the Chapter 7 case, which was, of course, after all of this. So I think, again, this proves why, under Del Viaggio, we need a reversal and for it to go back down to be evaluated under all of these new facts and circumstances. Unless your honors have any other questions, I would submit. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court that completes our calendar for today. We are on recess until 9 a.m. tomorrow morning. Thank you all.
judges: O'scannlain, Fernandez, Rawlinson